United States Bankruptcy Court
Northern District of Texas
1205 Texas Avenue, Room 306
Lubbock, Texas 79401

Chambers of
Robert L. Jones
United States Bankruptcy Judge

Telephone
(806) 472-5020

April 10, 2009

Robert A. Aycock
Field, Manning, Stone, Hawthorne & Aycock, P.C.
2112 Indiana Avenue
Lubbock, TX 79410

Ashley Wysocki
Mullin Hoard & Brown, L.L.P.
P.O. Box 2585
Lubbock, TX 79408

        Re:    Que Jay Fullmer and Debora Jean Fullmer,
                Case No. 09-50086-11

Dear Mr. Aycock and Ms. Wysocki:

     At the conclusion of the March 31, 2009 hearing on the motion of the debtors, Que and Debora Fullmer, to compel turnover from Unifeed Hi-Pro, Inc. (Hi-Pro), I advised you that I would try to issue a decision before the end of that week. I apologize for the delay. The issues proved to be more complex than I perceived them to be at the conclusion of the hearing. I have now reached a decision.

     I have concluded that Hi-Pro's setoff of $30,000 against the accrued damage claim was improper and, as a result, Hi-Pro is directed to return the $30,000 to the debtors.

     I adopt the parties' stipulated facts, which are not attached to the original of this letter, but will be attached to a copy of the letter that will be filed in the case file. Hi-Pro made two arguments in support of its position that it was entitled to effect the setoff (I am using the term "setoff" to merely describe Hi-Pro's action, not as a technical or legal term). First, Hi-Pro asserts that section 556 of the Bankruptcy Code authorizes its application of the $30,000 against the approximate $129,000 damage claim. I will not here analyze this provision in detail, but I will simply note that while the contract at issue here may be a forward contract and Hi-Pro is arguably

Mr. Aycock and Ms. Wysocki
April 10, 2009
Page 2

a forward contract merchant,[1] I am satisfied that the $30,000 payment is not a "variation or maintenance margin payment." These are forms or variations of a margin payment. *See* 11 U.S.C. 101(38). The payment was not made to protect an investor or broker in connection with a securities transaction; it was a payment for a specified quantity of corn and pellets.

Section 556 addresses the right of a "commodity broker, financial participant, or forward contract merchant to cause the liquidation, termination, or acceleration of a . . . forward contract . . . ." 11 U.S.C. § 556. It also provides that the right, for example, of a forward contract merchant to a variation or maintenance margin payment received from a trustee "shall not be stayed, avoided, or otherwise limited" by provisions of the Bankruptcy Code or by the court. The definition of "contractual right" in section 556 does not itself expand such "rights" to include a right to effect a setoff or a recoupment. The circumstances in this particular dispute do not concern the liquidation, termination, or acceleration of the contract. As was raised by Mr. Aycock at the hearing, the contract here is an executory contract. The Code specifically addresses the rights of the debtor and the counter-party to an executory contract. *See* 11 U.S.C. § 365.

Given my conclusion that we do not have an issue regarding the liquidation, termination, or acceleration of the contract, and, further, my conclusion that the $30,000 payment by the debtors was not a variation or maintenance margin payment, section 556 is not applicable and provides no authority to justify Hi-Pro's setoff.

The second argument made by Hi-Pro is that it was allowed to offset the $30,000 under the doctrine of recoupment. While I recognize this is a difficult issue, I am convinced that the doctrine of recoupment does not apply under the facts and circumstances of this case.

---

[1] Section 101(25) defines a forward contract as "a contract (other than a commodity contract as defined in section 761) for the purchase, sale, or transfer of a commodity, . . . with a maturity date more than two days after the date the contract is entered into." § 101(25). More simply put, forward contracts are "'contracts for the future purchase or sale of commodities that are not subject to the rules of a contract market or board of trade.'" *Williams v. Morgan Stanley Capital Group, Inc. (In re Olympic Natural Gas Co.)*, 294 F.3d 737, 741 (5th Cir. 2002) (quoting 5 COLLIER ON BANKRUPTCY ¶ 556.02[2], at 556-5 (Lawrence P. King ed., 15th ed. 2002)).

Section 101(26) defines a forward contract merchant as "an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity." § 101(26). Judge Lynn, in *In re Mirant Corp.*, 310 B.R. 548 (Bankr. N.D. Tex. 2004), addressed in detail the definition of forward contract merchant. He concluded that a forward contract merchant is "a person that, in order to profit, engages in the forward contract trade as a merchant or with merchants."

Mr. Aycock and Ms. Wysocki
April 10, 2009
Page 3

      The Fifth Circuit has, on several occasions, addressed the doctrine of recoupment. *See e.g. Matter of U.S. Abatement Corp.*, 79 F.3d 393 (5th Cir. 1996); *Matter of Kosadnar*, 157 F.3d 1011 (5th Cir. 1998); and *In re Gasmark, Ltd.*, 193 F.3d 371 (5th Cir. 1999). Recoupment is, at bottom, based on equitable principles. The claim of recoupment must arise out of the same transaction as does the claim by the counter-party, which requirement distinguishes recoupment from setoff. Both recoupment and setoff are exceptions to the Bankruptcy Code's rule of treating unsecured creditors equally (i.e., that they share pro rata from an available fund created by the bankruptcy estate). Given that recoupment arises from a single transaction, it may, under the right facts, allow for the setoff of a post-petition claim against a pre-petition claim and vice versa. Recoupment is not a product of the Bankruptcy Code. It, therefore, should be narrowly construed. *In re Gasmark, Ltd.*, 93 F.3d at 375. The Fifth Circuit has stated, on at least one occasion, that there must be "some type of overpayment" by the party asserting recoupment. *Matter of Kosadnar*, 157 F.3d at 1014. In another case, it stated that "an overpayment is not a required element for recoupment." *In re Gasmark, Ltd.*, 93 F.3d at 375; *see also, Matter of U.S. Abatement Corp.*, 79 F.3d at 398 (the court, in reversing the district court, stated that the district court cited no authority to support its "overpayment requirement" and, further, that "we have found none.") In short, a right of recoupment must arise from a single transaction and must effect an equitable result. *See In re Gasmark, Ltd.*, 93 F.3d at 375. An overpayment by a non-debtor buyer under a contract with a debtor seller (of goods or services) will typically satisfy this standard. *See id.*

      The analysis here is difficult in part because the debtors are the buyer and Hi-Pro is the seller, the opposite of the typical recoupment situation. There is no overpayment in the present case. The debtors simply wanted to purchase corn at the contract price. Hi-Pro, by the March 5 email, provided a chart with the dates, quantity, and cost of the corn. Significantly, the chart reflects a date, quantity, and price for "pellets," which are not addressed by the parties' contract. Hi-Pro induced the debtors to make the payment. The debtors made the payment for the sole purpose of acquiring the products, the corn and pellets identified in the chart. Requiring Hi-Pro to deliver the corn and pellets (or to refund the $30,000 upon its failure to do so) does not either injure Hi-Pro or unjustly benefit or enrich the debtors. In fact, as evidenced by Hi-Pro's damage claim and as counsel for the parties verified at the hearing, the price of corn on the market is less than the price under the contract. Had Hi-Pro honored the debtors' request, it would have benefitted from the transaction. On the other hand, the debtors' payment of $21,000 for the corn was obviously a premium price. I agree with the argument made by debtors' counsel that it is inequitable to allow Hi-Pro to create the debtors' claim against it by taking the corn and pellet payment and offsetting it against the damage claim. Assuming that the single transaction requirement is satisfied, it is equally clear that there are not sufficient inequities flowing to Hi-Pro or a windfall to the debtors to justify application of the doctrine of recoupment.

Mr. Aycock and Ms. Wysocki
April 10, 2009
Page 4


      Though I conclude that equitable principles prevent recoupment here, I am also convinced that the debtors' attempted purchase of the $30,000 of Hi-Pro's product was a transaction separate from the base contract. The contract itself provides nothing more than the basics regarding the parties' deal. It actually contemplates a series of transactions. In addition, Hi-Pro offset the payment for both the commodity covered by the contract and a commodity, pellets, not covered by the contract. Hi-Pro's taking of the $30,000 and applying it against the damage claim is nothing more than a setoff. As such, if allowed, Hi-Pro is preferred over the other unsecured creditors in the case. Hi-Pro has not argued that it validly effected a setoff, but, given the impropriety of a setoff, the transaction is not one authorized under the Bankruptcy Code. It is, in effect, a post-petition preferential payment on a pre-petition debt. The use of the funds for such purpose was not approved by the Court and is not authorized under the Bankruptcy Code. The debtors' transfer of the $30,000 to Hi-Pro's account was a post-petition transfer of estate property. Under section 549(a)(2) of the Bankruptcy Code, such transfer is avoided and Hi-Pro is directed to remit the $30,000 back to the debtors.

      I would ask that Ms. Wysocki prepare an order and judgment in accordance with this letter opinion. As indicated above, I will file a copy of this letter with the stipulated facts attached thereto in the case file.

Sincerely,

Robert L. Jones
United States Bankruptcy Judge

RLJ/bgs

| | |
|---|---|
| ROBERT A. (ANDY) AYCOCK | DAVID LANGSTON |
| STATE BAR NO 00789782 | STATE BAR NO.11923800 |
| DAX D VOSS | DARRELL J GUTHRIE |
| STATE BAR NO. 24047044 | STATE BAR NO. 24007289 |
| FIELD, MANNING, STONE, | MULLIN HOARD & BROWN, L.L.P. |
|    HAWTHORNE & AYCOCK, P.C. | P.O. Box 2585 |
| A Professional Corporation | Lubbock, Texas 79408-2585 |
| 2112 Indiana Avenue | Telephone: (806) 765-7491 |
| Lubbock, Texas, 79410-1499 | Facsimile: (806) 765-0553 |
| 806/792-0810 (Telephone) | ATTORNEYS FOR DEBTORS |
| 806/792-9148 (Facsimile) | |
| ATTORNEYS FOR UNIFEED HI-PRO INC. | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| QUE JAY FULLMER AND DEBORA | § | CASE NO. 09-50086-RLJ-11 |
| JEAN FULLMER D/B/A FULLMER | § | (Jointly Administered) |
| CATTLE COMPANY | § | |

## UNIFEED HI-PRO, INC. AND DEBTORS' STIPULATED FACTS FOR HEARING ON DEBTORS' MOTION PURSUANT TO 11 U.S.C. SECTION 549 FOR TURNOVER OF PROPERTY OF THE ESTATE TRANSFERRED POST-PETITION TO HI-PRO FEEDS, FRIONA, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW UNIFEED HI-PRO, INC. (hereinafter "Hi-Pro") a Creditor, and the Debtors[1] by their respective counsel of record, hereby submit their *Stipulated Facts* for the hearing on *Debtors' Motion Pursuant to 11 U.S.C. Section 549 for Turnover of Property of the Estate Transferred Post-Petition to Hi-Pro Feeds* (hereinafter "Motion for Turnover") [Docket No. 66] and show the Court as follows:

---

[1] The Debtors are the following individuals and entities: Que Jay Fullmer and Debora Jean Fullmer; Fullmer Auto Company Texas, L.L.C.; Fullmer Cattle Company Idaho, L.L.C.; Fullmer Cattle Company Texas, L.L.C.; Fullmer Cattle Operating Company, L.L.C.; Fullmer Equipment Holding Company, L L C , Fullmer Feeders Company, L.L.C.; Fullmer Trucking Company, L.L.C.; Nicks Dairy Commodities, L.L.C , Fullmer Cattle Company, New Mexico, L.L.C.; Fullmer Cattle Company, Northern California, L.L.C.; and Case No. 09-50092-rlj11 Fullmer Cattle Company, an Arizona, L.L.C.

## I.

## Stipulated Facts

1. The parties stipulate to the following facts:

a. Fullmer Cattle Company New Mexico, L.L.C. (hereinafter "Debtor Fullmer Cattle"), operates a dairy calf operation in Dexter, New Mexico, and is a Debtor in this bankruptcy case.

b. On October 1, 2008, Debtor Fullmer Cattle and Unifeed Hi-Pro, Inc. (hereinafter "Hi-Pro") entered into a contract, which provided that the Debtor Fullmer Cattle would purchase and Hi-Pro would sell 9,000 tons of crimped corn over a 12-month period for the delivered price of $249.60 per ton (hereinafter "the Contract").

c. Debtor was to take delivery of 750 tons of crimped corn each month pursuant to the terms of the contract.

d. The contractual relationship between Debtor Fullmer Cattle and Hi-Pro was at all times to be conducted on a cash basis and Debtor Fullmer Cattle was not extended credit by Hi-Pro.

e. It was the normal business practice of Hi Pro to demand and require that Debtor maintain a positive cash balance in its account with Hi Pro before it could receive delivery of feed corn from Hi Pro.

f. Hi-Pro's exhibits A-H are may be admitted with no objections from Debtor.

g. Debtor Fullmer Cattle's exhibits 1-7 may be admitted with no objections from Hi-Pro.

h. Hi-Pro delivered grain and Debtor Fullmer Cattle accepted the delivery of grain for a period of five months from October 2008 to February 2009.

i. No notice was provided by either party canceling the contract prior to March 2, 2009.

The contract has neither been accepted nor rejected pursuant to 11 U.S.C. § 365.

j. Debtor Fullmer Cattle purchased less than 750 tons of grain from Hi-Pro each month during the five month period.

k. On February 23, 2009, Hi-Pro, by and through an e-mail correspondence from Laura Odens, informed Debtor Fullmer Cattle that it was behind on the Contract with Hi-Pro by 1,592 tons of grain.

l. By and through the same e-mail correspondence from Laura Odens, Hi-Pro also informed Debtor Fullmer Cattle that Hi-Pro had sold off 1640 tons of grain and that Hi-Pro was going to invoice Debtor Fullmer Cattle the amount of $129,127.04.

m. On February 23, 2009, Hi-Pro sent Invoice No. 152689 to Debtor Fuller Cattle for the amount of $129,127.04

n. On March 2, 2009, Que Jay Fullmer and Debora Jean Fullmer filed a voluntary petition for relief under Chapter 11 and eleven other limited liability companies, including Debtor Fullmer Cattle, owned by or affiliated with the Mr. and Mrs. Fuller, each filed a voluntary bankruptcy petition on the same date, which said bankruptcy cases are now jointly administered under Case No. 09-50086-rlj-11.

o. On Thursday, March 5, 2009, Hi-Pro, by and through an e-mail correspondence from Laura Odens, sent an estimation of the cost of feed to be provided to Debtor Fullmer Cattle's Dexter facility from March 9, 2009, to March 13, 2009. The estimated cost provided was $30,000.00.

p. On Tuesday, March 10, 2009, Debtor Fullmer Cattle transferred $30,000.00 to the Hi-Pro Account at Amarillo National Bank.

q. On Wednesday, March 11, 2009, David Langston, attorney for Debtor Fullmer Cattle,

spoke with Richard Fitzgerald of Hi-Pro and informed Hi-Pro of Debtor Fullmer Cattle's bankruptcy.

r. On Friday, March 13, 2009, Debtor Fullmer Cattle demanded either delivery of the grain or a return of the $30,000.00 it had sent via wire transfer on March 10, 2009.

s. On March 16, 2009, the Debtors filed their Motion for Turnover against Hi-Pro, which has been set for hearing on Tuesday, March 31, 2009 at 9:00 a.m.

t. The parties agree and stipulate that if called, Gary Regner, of Debtor Fullmer Cattle would offer the following testimony, and Debtor Fullmer Cattle proffers the same:

> i. Pursuant to the email sent by Laura Odens on March 5, 2009, estimated the cost of feed for the week of March 9, 2009, through March 13, 2009, to be $30,000.00, on Tuesday, March 10, 2009, Debtor Fullmer Cattle transferred $30,000.00 to the Hi-Pro Account at Amarillo National Bank.
>
> iii. On Wednesday, March 11, 2009, at 10:51 a.m., Hi-Pro, by and through an e-mail correspondence from Laura Odens, sent notice to Debtor Fullmer Cattle that all feed orders have been cancelled, per management, until the invoice for corn sold is paid.

u. The parties agree and stipulate that if called, Richard Fitzgerald, of Hi-Pro would offer the following testimony, and Hi-Pro proffers the same:

> i. Prior to Hi-Pro crediting the Debtor Fullmer Cattle account with the $30,000.00 payment, said account had a negative balance.
>
> ii. After application of the $30,000.00 transfer to Hi Pro, there remains a negative balance in Debtors' account which reflects amounts owed by Debtor to Hi-Pro.

      iii.    The Debtors did not provide Hi-Pro with any notice with regard to the purpose or use of the $30,000.00 payment

      iv.    Hi-Pro made the decision to cancel any deliveries to Debtor Fullmer Cattle on March 9, 2009.

      v.    Hi-Pro's business consists in whole or in part of entering into forward contracts as or with merchants.

      vi.    At the time the contract with Debtor Fullmer Cattle was executed while Hi-Pro was conducting business in the commodities market.

Accordingly, Hi-Pro and Debtors submit these *Stipulated Facts* to the Court only for the purpose of the hearing on *Debtors' Motion Pursuant to 11 U.S.C. Section 549 for Turnover of Property of the Estate Transferred Post-Petition to Hi-Pro Feeds*, which is set for Tuesday, March 31, 2009 at 9:00 a.m.

        Respectfully submitted,

        FIELD, MANNING, STONE,
           HAWTHORNE & AYCOCK, P.C.
        A Professional Corporation
        2112 Indiana Avenue
        Lubbock, Texas, 79410-1499
        806/792-0810 (Telephone)
        806/792-9148 (Facsimile)

        By:*/s/ Robert A. Aycock*
          ROBERT A. (ANDY) AYCOCK
          State Bar No. 00789782
          DAX D. VOSS
          State Bar No. 24047044

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
By:/s/ David R. Langston
    David R. Langston
    State Bar No. 11923800

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument has been mailed by United States mail, postage prepaid, to each of the following listed parties on the 30th day of March, 2009.

Mr. Bill Parkinson
U.S. Trustee's Office
1100 Commerce Street
Room 9C60
Dallas, Texas 75242

Howard A. Borg, Esq.
Assistant United States Attorney's Office
Northern District of Texas
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, Texas 76102-6882

Max R. Tarbox
McWhorter, Cobb and Johnson, L.L.P.
P.O. Box 2547
Lubbock, Texas 79408-2547
Attorneys for Farm Credit Bank of the Heartland

Que and Debora Fullmer
1460 FM 1760
Muleshoe, Texas 79347

David Langston

Mullin, Hoard & Brown, LLP
PO Box 2585
Lubbock, Texas 79408

And all Persons requesting notice by ECF Notification System

                                  */s/ Dax D. Voss*
                                  DAX D. VOSS